In re LOIS E. READING et al., Appellants, v. DANIEL
E. CHANDLER et al.

In Banc, January 29, 1917.

1. **APPELLATE JURISDICTION:** Vacating Private Road. A proceeding brought in the county court to vacate a private road previously established so involves title to real estate as to give jurisdiction to the Supreme Court of an appeal from the judgment of the circuit court.

2. **PRIVATE ROAD:** Vacation: Necessary Showing. Under the statute two things must be shown to authorize an order vacating a private road: first, that a public road has been established to which defendant has access, and, second, that such access is convenient and practical.

3. ——: ——: Necessity or Necessity and Convenience. The statutes are somewhat broader than the rule announced in decisions and textbooks that private roads are ways of necessity, and when the necessity ceases the private way ceases, in that they say the private way is "to connect with some public road at some convenient point," and that a private way may be vacated if it is made to appear that the landowner has at the time "convenient and practical" access to his land from a public road. If the private way has been established at the expense of the landowner and affords him access to a public road at a "convenient" point, it cannot be vacated until it is made to appear that after its establishment a "convenient and practical" access to a public road has been brought about.

   *Held*, by WOODSON, J., dissenting, with whom BOND and WILLIAMS, JJ., concur, that as the Constitution says that "no private property can be taken for private use, with or without compensation, unless by the consent of the owner, except for private ways of necessity," private property can be taken by condemnation for a private way only when the way is necessary, and the right cannot be made to rest on convenience; and the statute authorizing the condemnation of land for a private way "to connect with some public road . . . at some convenient point" means that the way must be one of necessity and so established as to connect with the public road at a convenient point, and does not mean that a private way can be established when convenient, but not necessary for access or egress; and as private property cannot be acquired by condemnation for one purpose and be held and used for another, a private way so acquired ceases when the necessity ceases, and its vacation cannot be defeated on a showing that, though

not absolutely necessary, it affords a "convenient and practical" access to a public road; and if the statute so means it would be unconstitutional, for it would be to authorize the landowner to acquire a permanent use in land without just compensation, since in acquiring the private way he paid for only a temporary use.

4. ———: ———: ———: **Increased Travel.** Since the establishing of a private way from a public road to defendant's dwelling on the southern portion of his property, another public road which is a mere *cul de sac* has been established, which reaches his land a half mile north, and to reach his usual trading point by it, he would have to travel about a half mile north, then east along the *cul de sac* road a like distance, and then south a half mile, before reaching a point on the main public road touched by the private road. *Held*, that, in determining whether the access afforded by the *cul de sac* road is "convenient and practical" the location of defendant's dwelling, as well as all other facts, must be considered, and also the fact that the owner was compelled to pay damages for the present private way; and under the facts, the private way should not be vacated.

*Held*, by WOODSON, J., dissenting, with whom BOND and WILLIAMS, JJ., concur, that the evidence shows that the private way has ceased to be a way of necessity, and is only a way of convenience, and should be vacated.

Appeal from Pike Circuit Court.—*Hon. B. H. Dyer,* Judge.

AFFIRMED.

*Pearson & Pearson* for appellants.

(1) It is now well settled law of the various states, that a *cul de sac* may be a highway; or, in other words, that it is not essential that a highway be open at both ends, to form a thoroughfare; but, it may be closed at one end by private lands or building. 15 Am. & Eng. Ency. Law (2 Ed.), p. 351; 2 Words & Phrases, p. 1779; Patton v. Forgey, 171 Mo. App. 1; Sec. 10456, R. S. 1909. (2) The judgment of the county court establishing the public road referred to in the pleadings and the evidence, was conclusive and binding on the trial judge; and was not subject to collateral attack, on a hearing, in a matter to vacate this private road. State v. Schinkle, 129 Mo. App. 237; Halter v. Leonard, 223 Mo. 292; New Madrid

County v. Phillips, 15 Mo. 65. (3) A public road having been subsequently dedicated, established and opened up to respondents' land, which furnishes them a "convenient and practical access thereto, from a public road, without crossing the lands of others," entirely obviates the necessity for the private road in question; and the plaintiffs have an absolute right to have it vacated. (a) The private road in question, petitioned to be vacated by the plaintiffs, was simply a way of necessity; and was so established. Art. 2, sec. 20, Mo. Constitution; Chandler v. Reading, 129 Mo. App. 69. "A way by necessity, in whatever manner it may have originated, is not extinguishable while its use is requisite, but ceases with the necessity which created it, and is suspended by a temporary cessation of the necessity." Sec. 10458, R. S. 1909; Vossen v. Dautel, 116 Mo. 385; Cox v. Tipton, 18 Mo. App. 450; Tiedeman on Real Property (1885 Ed.), sec. 609, p. 472; 23 Am. & Eng. Ency. Law (2 Ed.), p. 44. (b) Respondents' plea and contention is, that a vacation of this private road must be made, if made at all, upon the condition that he be refunded what he paid for the establishment of this private way of necessity; in other words, his contention is, that he bought this private road. This position is untenable. First. Respondents only secured a right of passageway, across appellant's land, for an uncertain length of time—just so long a time as there was no other way to get to their land, from a public road, viz.: only, until a public road was opened up to their land. They acquired no other right. They knew at the time they paid their money, that was all they were getting. Second. This public road, obviating respondents' way of necessity, was dedicated, established and opened up to respondents' land, without an effort on the part of, nor one dollar of cost to, respondents. Third. Appellant Sparks has never been paid a cent by respondents, for taking and using his land, as a way of necessity. But, on the contrary, upon the establishment of this way of necessity, he was thereby forced, at his own expense to divide his farm; lose the use of a strip of ground twenty feet wide, all the way through it; building a fence on

either side, at great cost to himself; and to submit to other great inconvenience, all for the benefit, use and pleasure of the respondents alone, without a cent remuneration. Fourth. Appellant Reading, upon the establishment of said private way of necessity, was forced, without any consideration for her rights or convenience, to divide, and open a lane through her pasture and feed lot; cut off her water supply for stock, from her pasture land; and either at great expense, build a line of fence, or abandon the use of a fifteen or twenty-acre tract of land, used exclusively as a feed lot and for water supply, and which said tract of land, on account of its peculiar position and condition, although very valuable as a feed lot and for water in connection with the rest of her land, would, by being fenced off by itself, be rendered so inconvenient, that it would be unavailable and worthless for that or any other purpose. (4) Appellants should have this private way of necessity vacated absolutely and unconditionally; because they have secured the establishment of a public road from respondents' land to a public road without any cost whatever to respondents.

*Hostetter & Haley* for repondents.

(1) Before appellants are entitled to a judgment vacating respondents' private road, it is obligatory on them to prove to the satisfaction of the court that a public road has been opened so as to give respondents "convenient and practical access" to their land "from a public road without crossing the lands of others." Sec. 10457, R. S. 1909. (2) The alleged public road (the *cul de sac*) did not afford respondents "convenient and practical access," etc. This was a question of fact for the trial court to determine from the evidence adduced. The appellants had the laboring oar on this proposition. The burden of proof was upon them. They offered testimony on the subject. The finding of the lower court against appellants can be upheld upon the palpable fact that they failed to satisfy the court on this issue. Its conclusion on this question of fact cannot be interfered with by this court without doing violence to a multitude of authori-

ties. (3) A *cul de sac* cannot under the Missouri statutes become a public road. A public road must be of public utility and public necessity. Secs. 10433, 10437 and 10461, R. S. 1909. Before any strip of land can become a public road through the avenues of proceedings in the county court, the court must find affirmatively that such proposed road is one of public necessity and utility. In re Gardner, 41 Mo. App. 589; Strahan v. County Court, 65 Mo. 644; Mayes v. Palmer, 206 Mo. 293. A *cul de sac* can in no event be of public utility or public necessity. Hence it can in no instance be created as a public road.

GRAVES, C. J.—This case reached us from the St. Louis Court of Appeals, the certification being upon the ground that title to real estate is so involved as to invoke our jurisdiction rather than theirs.

The further salient facts are, that some time prior to this action Daniel C. Chandler, one of the defendants herein, presented a petition to the county court of Pike County, praying for a private road of necessity over the lands of Luther F. Sparks and Lois E. Reading. The prayer of his petition was granted and the private road duly established, but not until Sparks and Reading had invoked the judgment of the St. Louis Court of Appeals upon at least one question therein. [Chandler v. Reading et al., 129 Mo. App. 63.]

After the establishment of this private road there was an attempt to open a public road to Chandler's land some half mile distance north of the private way. In this Lois E. Reading, L. F. Sparks, and Dr. D. M. Pearson appear to have been the leading spirits. A plat in defendant's brief shows the situation of the matters in dispute, and for the exactness of the information which it furnishes we insert it here.

In re Reading v. Chandler.

From this plat and from the evidence it appears that this alleged new road is a mere *cul de sac,* terminating at the east line of Chandler's land, nearly a half mile north of the private way.

When this alleged public road was thought by the parties to have been established, Lois E. Reading and Luther F. Sparks brought the present action in the county court to have the private road vacated.

Chandler had paid the damages awarded in the establishment of his private way, and it will be observed from the plat that in going from his home to Louisiana (his trading point) the private way is nearly a mile nearer than the alleged public road. On trial in the county court the petition of Reading and Sparks to vacate the private road was denied, and upon appeal to the circuit court a like result followed. From the circuit court judgment, as stated, the appeal was taken to the St. Louis Court of Appeals, but that court has certified it here. This outlines the case. Other matters will be noted in the opinion.

I. The result of the action must be either to maintain Chandler's easement over the lands of Reading and Sparks, or to rid such lands of that easement. Our jurisdiction in such cases is clearly recognized by BRACE, J., in Wells v. Harris, 137 Mo. l. c. 515, wherein he approved the certification of that case from the St. Louis Court of Appeals, on the strength of the case of State ex rel. v. Rombauer, 124 Mo. 598. The only difference between the Wells case, supra, and this is, that in the Wells case it was sought to establish the easement of a private way, whilst here it is sought to remove it. On the question of jurisdiction there is no distinction. We therefore retain jurisdiction.

**Jurisdiction.**

II. This is a statutory action brought under section 10457, Revised Statutes 1909. That section so far as applicable to the facts in this case reads: "If, at any time after a private road has been opened under the provisions of this article, a public road shall be opened so as to give to the owners and occupants of such tract or lot of land, as is contemplated by this article, *convenient* and

practical access thereto from a public road, without cross-
ing the lands of others, . . . it shall be lawful for the
county court to vacate such private road in the manner
hereinafter provided."

Under this statute two things must be shown before
plaintiffs would be entitled to the vacation of defendant's
private road: (1) that a public road has been established
to which defendant had access and (2) that such access
was *convenient* and practical.

There are many technical questions urged in support
of the judgment *nisi*, but these we pass. Nor do we think
it necessary to determine whether or not the alleged new
public road was in fact legally established. If established
it was but a. *cul de sac* through which defendants might
pass from the northern portion of their farm to the real
public road to the east thereof. It was in view of a dis-
cussion of the statute that we included in our statement
the plat of the situation. From this plat it appears that
the dwelling of the defendants is on the southern portion
of their land; that the private way runs directly from
this dwelling to the real public road; that to go to their
trading point, Louisiana, over the new public road, de-
fendants would have to go north nearly a half mile and
then come south the same distance, before reaching the
point on the main public road touched by the private way.
In other words, upon each trip to Louisiana he would
have to travel practically one mile more than he would
travel by the private way. The evidence is conflicting as
to which is the better ground for a road. Under the facts
and the peculiar language of our statute should the judg-
ment *nisi* be disturbed? We think not. It may be con-
ceded that it has been announced in the text-books and
the cases that private roads are ways of necessity, and
when the necessity ceases the private way should cease.
But these texts and cases aid us but little in this case, be-
cause we must deal with our own statutes. These stat-
utes seem to have added some to the things requisite to put
at an end a private way once established. Our statute
for the establishment of a private road (Sec. 10447, R.
S. 1909) provides that the person seeking such a way can

apply for such a way "to connect with some public road . . . at some *convenient* point." The idea of convenience runs through the whole matter like a silver thread. When we come to the statute (Sec. 10457, supra) under which this action is brought we find the same silver thread. There it is said the private way may be vacated if it be made to appear that the landowner ·has, at the time, "*convenient* and *practical*" access to his land from a public road. Mere access to a public road, under this statute, is not sufficient to authorize the vacation of a private road. Such access must be "convenient and practical," and whether it is "convenient and practical" is a question for the trier of the fact to determine from the evidence. In determining this fact we think the location of the residence, as well as all other facts, must be considered. We must not lose sight of the fact that the Legislature, in placing this limitation in the statute, i. e., that the access must be "convenient and practical," may have considered that the owner of the private way might have been compelled· to pay damages for ·his way, which in the first place connected with a public road at a "convenient point." In other words, the legislative· idea, at least, was that his private way could not be disturbed until it appeared that after its acquisition a "convenient and practical" access to a public road had been brought about. The question seems to be one of first impression, as I find no case construing this statute (section 10457), from this angle. Under the facts in this case, we are constrained to hold that plaintiffs failed to show that defendants had convenient and practical access to a public road, outside of their private way, and the judgment *nisi* should be affirmed.

*Blair, J.,* concurs; *Woodson, J.,* dissents in opinion filed in which *Bond, J.,* joins. There being no majority opinion, the cause is transferred to Court in Banc.

PER CURIAM.—The foregoing opinion of GRAVES, P. J., from Division, is adopted as the opinion of the Court in Banc. *Walker, Faris* and *Blair, JJ.,* concur; *Woodson, J.,* dissents in an opinion filed, in which said dissenting opinion *Bond* and *Williams, JJ.,* concur.

WOODSON, J. (dissenting).—I dissent from the majority opinion for the reason that the right to establish a private road rests solely upon section 20 of the Bill of Rights, which provides "that no private property can be taken for private use, with or without compensation, unless by the consent of the owner, except for private ways of necessity," etc.

· Prior to the adoption of the Constitution of 1875, of which said section 20 is a part, there existed in this State no means by which a private way could be established, however great the necessity therefor might have been, except by agreement of parties.

But wherever that right did exist, whether at common law, or under the constitutions and statutes of other States, it was always predicated upon the sole ground of *necessity,* not convenience, and the universal corollary to that right, namely, that when the necessity for the private road ceased to exist, the right to the road itself likewise ceased to exist. All of the authorities so hold, as I understand them. That was the condition of the law when the Constitution of 1875 was adopted, and the framers thereof must have used the words "for private ways of necessity," in their ordinary meaning and common acceptation at that time. This rule of construction, both as to constitutional provisions and statutory enactments, is so well known that a citation of authorities in support thereof would be useless.

That being true, we will return to said constitutional provision: Private property shall not be taken for private use "except for private ways of necessity."

This language excludes the right of one person to have a private road established over the land of another for his convenience merely; the road must be an *absolute necessity,* as provided for by the Constitution, to connect his private property with a public road. For illustration, suppose we transpose the facts of this case, and assume that the public road mentioned had been established as it now exists, prior to the date the private road was petitioned for, then could or would any court have held that said private road would have been a road of necessity,

within the meaning of said constitutional provision? I apprehend not. While the private road in that case, as in this, might have been more convenient to Chandler than the public road, yet in no sense of the word could it have been seriously contended that its existence was necessary for his ingress and egress to and from his property.

It might also have been more convenient for Chandler to have had this farm located within a mile of Louisiana, his trading point, yet that was no more a necessity than to have a road a mile shorter.

That being self-evident, as it seems to me, the corollary thereto, as previously stated, is that when the necessity for the private road ceased to exist, then the right to the road itself also ceased. This is also self-evident and conclusive of the question. [Vossen v. Dautel, 116 Mo. 379; Cox v. Tipton, 18 Mo. App. 450; Cooper v. Maupin, 6 Mo. 624; Goddard on Easements (Bennett's Ed.), 267, 270; Nichols v. Luce, 24 Pick. 102; Washburn on Easements (3 Ed.), 233; Tiedman on Real Property (1884 Ed.), sec. 609, p. 472; 23 Am. & Eng. Ency. Law (2 Ed.), p. 44.]

In the Vossen-Dautel case, supra, Judge BLACK, on page 385, in speaking for this court on this question, used the following language:

"The principle of law is of old standing and well settled that a grant of a way is presumed to have been made whenever land has been sold which is inaccessible, except by passing over the land of the grantor or by committing a trespass upon the land of a stranger. It is founded on the further principle that when a grant is made, every right is also presumed to have been granted, without which the subject of the grant would be useless. [Goddard on Easements (Bennett's Ed.), 266, 267; Washburn on Easements (3 Ed.), 233.]

"But it is equally well settled that the presumption of a grant of way of necessity does not arise where the person claiming it has access to his land. A way of necessity exists only where the person claiming it has no other means of passing from his estate into the street or road. One cannot have a way of necessity because

it is more convenient than the way which he has. [Washburn on Easements (3 Ed.), 234, 235; Cooper v. Maupin, 6 Mo. 624; Goddard on Easements (Bennett's Ed.), 267, 270; Nichols v. Luce, 24 Pick. 102.]

"Again, the necessity limits the duration of the right of way. The rule on this subject is thus stated by Washburn: 'And so limited is the right of way of necessity in respect to its duration, that, though it remains appurtenant to the land in favor of which it is raised so long as the owner thereof has no other mode of access, yet the moment the owner of such a way acquires, by purchase of other land or otherwise, a way of access from a highway over his own land to the land to which the way belongs, the way of necessity is at an end; or, in other words, a way of necessity ceases as soon as the necessity ceases.' [Washburn on Easements (3 Ed.), 235.]

"Applying these principles to the case in hand, it must be evident that plaintiff has no way of necessity. When he purchased the one hundred and forty-eight acres of Sullens there was a public road on and along the north side of the land so purchased, and, that being so, there can be no presumption of a grant of a way over the other lands still held by Sullens. It is one or two miles further to the Olive Street road by the Schuetz road than through the Sullens one hundred and two acres, and the Schuetz road is as yet a dirt road, while the Olive Street road is a rock road. These are all mere matters of inconvenience and do not lay any foundation for a right of way of necessity. There is some evidence tending to show that though the Schuetz road had been laid out by the county as far back as 1855, it was not opened up for travel until 1870. Conceding this to be true, still when it was opened up to travel the right to a way over the one hundred and two acres ceased. When the necessity ceased the right of way ceased."

That case is supported by all of the authorities cited; in fact, our attention has not been called to any authority holding to the contrary, nor have we been able to find any such after a careful search. So in the lan-

guage of the majority opinion filed in Division, it may truthfully be said: "It may be conceded that it has been announced in the text-books and cases that private roads are ways of necessity, and when the necessity ceases the private way should cease."

Clearly that was the sense in which the Constitution used the words "private ways of necessity," and the Legislature had no power to reduce the necessity for the road or its vacation to one of mere convenience; and in the absence of any provision to the contrary, it seems to me that the framers of the Constitution must have intended that when the necessity for the private way ceased the legal right to the way itself ceased also. But be that as it may, I know that is the rule the text-writers lay down, and the courts of other states hold, regarding similar statutes.

The words "convenient and practical" used in the statute authorizing the vacation of a private road, were used in the same sense in which the words, "to connect with some public road . . . at some convenient point" are used in the statute authorizing a private way to be opened; that is, a *convenient point* within the limits of the necessity provided for by the Constitution, and when that necessity ceased to exist likewise the right to the road ceased to exist.

It has been suggested that there is a legal distinction between the words "the right to acquire a private way of necessity" as used in the Constitution, and the right to hold and enjoy the way after it has been acquired under the statute. If that be true, then, in my opinion, the statute would clearly be unconstitutional and void, for the obvious reason that property cannot be acquired by condemnation for one purpose and then be held and used for another. There is a difference between a public and private use. [Belcher Sugar Refining Co. v. St. Louis Grain Elevator Co., 82 Mo. 121, 101 Mo. 192; State ex rel. v. Dreyer, 229 Mo. 201, l. c. 238.]

By analogy and parity of reasoning it must follow that a strip of ground cannot be acquired by grant or

condemnation for the purpose of a private road, one limited in duration and use, and without the consent of the original owner or an additional condemation, be converted into a public use and for an unlimited time; such are the distinctions between private and public ways as are made in the Constitution and statutes of this State. The former being limited in duration and usage is naturally acquired for less compensation than is a public road which is unlimited both as to duration and use. This rests upon the same principle that a life estate in land is not worth as much as the fee thereto, and for that reason it may be acquired for less money than the fee. The private way in the case at bar was acquired by condemnation, and, of course, was obtained for a less sum than it could have been acquired by the respondents. had it been a public road, unlimited in duration and use. In the case at bar the appellant's property was condemned for a limited time and purpose and the respondents are now trying to hold the same for an unlimited time and use; if successful in that attempt, then, in my opinion, the latter would obtain an estate in the former's land, the difference between a limited and an unlimited estate, without just compensation paid therefor, in violation of both the State and Federal constitutions; also without due process of law.

I, therefore, dissent. *Bond* and *Williams, JJ.,* concur with these views.