**Louis R. SZOMBATHY, Appellant,**

**v.**

**FERGUSON–FLORISSANT REORGA-
NIZED SCHOOL DISTRICT
R–2, Respondent.**

**No. 44705.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 5, 1984.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 12, 1984.

Application to Transfer Denied
Sept. 11, 1984.

Husch, Eppenberger, Donohue Elson & Cornfeld by Mark G. Arnold and Carroll J. Donohue, St. Louis, for appellant.

Susman, Schermer, Rimmel & Parker by Norman C. Parker and Michael Waxenberg, St. Louis, for respondent.

SATZ, Judge.

Plaintiff, Louis R. Szombathy, sued to vacate a private way.  Following a court tried case, the court entered its findings of fact, conclusions of law and judgment in favor of defendant, Ferguson-Florissant Reorganized School District R–2 (School District).  We reverse with directions.

For clarity, we set out a diagram of the road in question and the property surrounding it.

In 1948, plaintiff purchased a 12 acre tract of land, bordered on the south by Airport Road, in Berkeley, Missouri. Plaintiff decided to develop this tract. In 1949, he dedicated a street, known as Alice Drive, which ran northwardly from Airport Road into his tract.

In 1953, the School District's predecessor in interest acquired approximately 4.8 acres of plaintiff's tract by eminent domain. The west line of this tract abutted some 290 feet along the east line of Alice Drive but stopped about 174 feet north of Airport Road. Shortly thereafter, plaintiff revoked his dedication of Alice Drive. This left the School District's tract landlocked.

The School District then acquired the 30 foot private way in question, as a way of necessity under § 228.340 RSMo 1978. This way runs north from Airport Road, across plaintiff's land, to the southwest corner of the 4.8 acre tract. The west line of the private way abuts what was the east line of Alice Drive. In 1954, Airport Elementary School was built on the 4.8 acre tract.

The 30 foot way was paved and provided the sole pedestrian and vehicular ingress and egress to Airport School. In 1980, exercising its rights of eminent domain, the School District acquired an approximate 2 acre tract, fronting on Airport Road and abutting the west line of the 4.8 acre tract on which Airport School was built. This 2 acre tract has 117 feet fronting on Airport Road, and the total length of the common property line between the 2 acre tract and the original 4.8 acre tract is approximately 588 feet.

The School District planned to use the 2 acre tract for a U-shaped driveway and a parking lot. Each side of the U-shaped driveway was to be 20 feet wide and serve one-way traffic—the east side of the U would be the entrance from Airport Road and the west side would be an exit on to Airport Road. The parking lot would be adjacent to and north of the driveway and would be west of the school building. Thus, school buses could enter from Airport Road, load and unload immediately adjacent to the school building, turn around on the parking lot and the exit on to Airport Road.

The School District discontinued the use of the 30 foot private way for vehicular traffic, removed the black top and built a 6 foot wide sidewalk on this 30 foot way. On the west side of the walk, trees and grass separate the walk from the east driveway to the parking lot, and grass extends from the east side of the walk to the east boundary line of the 30 foot way.

As part of the construction of Airport School, the School District had installed water and gas lines running from Airport Road underneath the 30 foot way into the school. At the place the 30 foot way meets Airport Road, St. Louis County installed an electric signal which pedestrians could activate for crossing Airport Road. Also, there is a utility pole located on Airport Road just back of the existing curb halfway between the entrance and exit drives.

Plaintiff petitioned for vacation of the 30 foot way. Plaintiff's petition rested on § 228.440 RSMo 1978 which provides for the vacation of a private road "if the owners and occupants of [the land which was originally landlocked] shall acquire title to and possession of adjoining lands which give them convenient and practical access to a public road without passing through the lands of others ..." In denying plaintiff's petition to vacate the 30 foot way, the trial court found:

"15. Even with the acquisition of the additional [approximate 2] acres fronting on Airport Road it is not convenient and practical for the School District to abandon the use of the 30 foot road. This road is necessary to insure a safe and accessible path for students walking to and from Airport School.

16. The abandonment of the 30 foot road would cause substantial expense to the School District. The water and gas lines would have to be relocated. The electric pedestrian signals would have to be relocated at a cost of $16,000.00 to $18,000.00. One utility pole would have to be moved at a cost of $5,000.00 to

$8,000.00. The plan of construction designed by Team Four, Inc. is based upon avoiding the removal of any utility poles or lines and the utilization of the existing curb cuts into Airport Road.

17. The access to Airport Road acquired by Defendant School District is not convenient and practical without use of the 30 foot road described in the evidence. It would be inconvenient and impractical to vacate said road."

Plaintiff argues there is no substantial evidence to support the trial court's finding the newly acquired 2 acre tract did not provide convenient and practical access to Airport Road without the use of the 30 foot way.[1] We agree.

The parties' research as well as ours has uncovered only one Missouri case in which the court was confronted with the proper meaning of "convenient and practical access" as used in § 228.440 RSMo 1978. *See, Reading v. Chandler,* 269 Mo. 589, 192 S.W. 94, 95 (banc 1917). In *Reading,* the court held that an alternate access which required the defendant to travel one extra mile to and from his place of business was not a convenient and practical access so as to warrant vacation of a private road of necessity. *Reading* is of little practical use here. However, § 228.340 RSMo 1978 defines the prerequisites for establishing a private way, the obverse of the situation here, and we find court interpretation of that statute relevant and helpful here.

Literally read, § 228.340 RSMo 1978 permits establishment of a private road only as a way of "strict necessity." In practice, however, this "necessity" occurs when there is an absence of reasonable and practical alternative access. As stated by our Supreme Court in *Evans v. Mansfield,* 364 S.W.2d 548, 551 (Mo.1963):

"In order to be a defense to plaintiff's right to obtain a private road through defendant's property the other available way must be reasonable and practical."

■ We find this "reasonable and practical" standard for establishing a way of necessity is equivalent to the "convenient and practical" standard used in § 228.440 RSMo 1978 for vacating a way originally acquired as a way of necessity. Necessity, the absence of alternative reasonable and practical access, must be proved to acquire a private way. It follows, we believe, that vacating the private way is required when the necessity is removed; i.e., with proof of the same kind of access that would have vitiated the need for the private way in the first place. This proposition has been tacitly approved by our courts which repeatedly cite the "convenient and practical" standard of *Reading v. Chandler, supra,* for the vacation of a private way, as an appropriate standard in actions seeking the establishment of a private way. *See, e.g., Evans v. Mansfield, supra,* at 551; *Madison v. Sheets,* 231 S.W.2d 869, 873 (Mo. App.1950). The evidence here shows plaintiff proved this proposition and, thus, properly carried his burden.

■ There is no dispute that the two acre tract provides the School District with convenient and practical vehicular access without the use of the 30 foot way. Furthermore, pedestrians using this new vehicular access would be exposed to no different dangers than the pedestrians who used the 30 foot way. Plaintiff established this in his case in chief. At that point, plaintiff had effectively shown the original need for acquiring the 30 foot way no longer existed. In effect, plaintiff had made a prima facie case. The trial court so found in overruling the School District's motion for directed verdict at the close of plaintiff's case.

1. Plaintiff also argues the trial court erred in basing its judgment on a finding that it is not convenient and practical for the School District *to abandon* the 30 foot way. The relevant question, plaintiff argues, is whether acquisition of the 2 acre tract provides convenient and practical access to a public road.

Plaintiff misreads the trial court's findings by narrowly focusing on the last sentence of the court's finding No. 17, *supra.* We read the trial court's findings together and conclude the trial court did base its judgment on the finding that the 2 acre tract did not provide a convenient and practical access to Airport Road.

Although the burden of proof or risk of nonpersuasion remained plaintiff's burden or risk, the burden of going forward shifted to the School District. The issue narrowed down to the need of the 30 foot way for pedestrians; more specifically, the need to construct the sidewalk within the 30 foot way.

According to the School District's expert, there were several reasons for constructing the sidewalk within the boundaries of the 30 foot way. The first was to create a space for grass and trees to upgrade the aesthetic appearance of the school and to create a physical protective barrier between students walking to and from school and vehicles entering the school grounds. Accordingly, the sidewalk was placed in the center of the 30 foot strip, leaving a 14½ foot wide strip of grass to the east and a 29½ foot wide lawn with trees separating the sidewalk from the east driveway into the parking lot.

Another reason for the present location of the sidewalk is dictated by the grade of the land on the private roadway contrasted to the grade of the 2 acre tract. The tract of land containing the school building and the 30 foot private roadway sit considerably lower than the 2 acre tract. The sidewalk was constructed on the lower level, the private roadway, to comply with federal regulations by providing direct access to the school for the handicapped and for mothers pushing strollers without the use of steps or steep ramps.

On cross examination, however, the School District's expert admitted that all of the above requirements could have been met if the sidewalk were located within the 2 acre tract. There is a 20 foot wide strip between the west line of the 30 foot private way and the east driveway into the parking lot. The School District's expert stated this 20 foot strip would afford ample space for the sidewalk as well as for grass and trees. The grass and trees would be aesthetic and as well as serve as a protective barrier for students. Similarly, although this relocation of the sidewalk would require grading, this could have been solved through the erection of walls. The only disadvantage would be additional cost.

■ We believe cost is a factor in determining whether an alternative access offered to vacate a way of necessity meets the statutory requirement of a "convenient and practical" access. We reach this conclusion by again turning to the requirement for establishing a way of necessity. An access road offered as an alternative to the grant of a way of necessity is unacceptable if the alternative road can be constructed only at unreasonable expense, *Madison v. Sheets, supra* at 872; *Evans v. Mansfield, supra* at 551, but the alternative access is acceptable if it simply requires inexpensive changes in the terrain, *Welch v. Shipman,* 357 Mo. 838, 210 S.W.2d 1008, 1011 (1948). From this, it follows that an alternative access offered to vacate a way of necessity is only "convenient and practical" if the cost is not prohibitive. In the present case, the burden of going forward and showing the cost was prohibitive was on the School District, particularly, since any evidence regarding the cost would be far better known to the School District than to plaintiff, *Ward v. Scott County Milling Co.,* 47 S.W.2d 250, 253–54 (Mo.App.1932). The School District failed to show what the additional cost for relocating the sidewalk would be.

Moreover, from the available evidence, these costs appear reasonable. There was extensive regrading done on the 2 acre tract in construction of the U-shaped driveway and the parking lot. There is no indication in the record that this construction entailed an unreasonable expense. Thus, we have no reason to believe regrading for relocation of the sidewalk area could not be similarly accomplished.

Furthermore, the elevation of the first floor of Airport School is 566.84. The elevation of Airport Road at its intersection with the private roadway is between 573 and 574 feet. The elevation of Airport Road at its intersection with the 20 foot strip, between the private roadway and the east entrance way, is between 574 and 575 feet. This single foot of additional incline

could not require prohibitive costs for relocating the sidewalk.

The School District's expert, however, did testify that relocating the traffic lights on Airport Road would cost between $16,000.00 and $18,000.00, relocation of the utility pole approximately $5,000.00 to $8,000.00 and relocation of curb cuts between $2,000.00 and $3,000.00. These costs, however, would be incurred only with a redesign of the driveways leading to and from Airport Road. Plaintiff simply and sensibly suggests the sidewalk could be relocated within the 20 foot strip between the eastern driveway and what was the west property line of the 30 foot private way. This would not require relocation of the driveways and, thus, these costs have no relevance to the disposition of this case.

The School District is properly concerned that plaintiff may insist on removing the gas and water lines located under the 30 foot way, if this way is returned to plaintiff. However, plaintiff is willing to consent to an easement for these water and gas lines. Thus, this concern of the School District can be alleviated by proper court order.

The entire purpose behind acquisition of the 2 acre tract was to provide safe and convenient access to Airport School for pedestrians, buses and other vehicles. We find this acquisition has accomplished its goal. We find the trial court's conclusion "[t]he access to Airport Road acquired by Defendant School District is not convenient and practical without use of the 30 foot road ..." is not supported by sufficient evidence.

Accordingly, we reverse and direct the trial court to enter judgment in favor of plaintiff, and direct the court, as part of the judgment, to order plaintiff to grant to the School District an appropriate easement for the use and enjoyment of the water and gas lines under the private way in question here.

SMITH, P.J., and PUDLOWSKI, J., concur.